Ruben S. ABUNDIS, et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 22–88C.

United States Claims Court.

Nov. 9, 1989.

Thomas A. Woodley, Washington, D.C., for plaintiffs. Gregory K. McGillivary, of counsel.

Brian A. Mizoguchi, with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen, and Robert A. Reutershan, Washington, D.C., for defendant.

OPINION

BRUGGINK, Judge.

Pending before the court is plaintiffs' motion for partial summary judgment on the issue of liability. After oral argument, the court directed the parties to narrow the fact issues by resubmitting proposed findings of fact. Additional briefing was also allowed. After considering the parties' submissions and argument, the motion is denied.

I. BACKGROUND

Ruben S. Abundis and over 500 others who have filed their written consent to be party plaintiffs in accordance with 29 U.S.C. § 216(b) (1982), are, or were, employed by the United States Government in engineering, technical, or related job categories at various locations. They are or were employees within the meaning of section 7(a) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a). This action seeks backpay, liquidated damages, interest, and attorney's fees, pursuant to 5 U.S.C. § 5596 (1988), 28 U.S.C. §§ 1346(a)(2), 1492, 2201, 2202 (1982), and 29 U.S.C. § 216(b). The original complaint was filed on January 13, 1988. This was followed by the first-amended complaint on March 9, 1988, and the second-amended complaint on June 21, 1988. Discovery has been limited pending the outcome of the present motion.

Plaintiffs allege that they have been unlawfully exempted from entitlement to overtime compensation under section 7(a), due to plaintiffs' employing agencies' adherence to regulations promulgated by the Office of Personnel Management ("OPM"), the Government agency charged with administering the FLSA with respect to federal employees. See id. § 204(f).

Section 7(a) provides that an employer shall compensate its "nonexempt" employees at a rate not less than one and one-half times their regular rate of pay for each hour employed in excess of 40 hours per week. Section 13 then creates several categories of work which exempt employers from an obligation to pay overtime wages.

29 U.S.C. § 213. Relevant to this action is the following language:

(a) The provisions of section 206 ... and section 207 of this title shall not apply with respect to—

(1) any employee employed in a bona fide executive, administrative, or professional capacity....

*Id.* § 213(a).

On October 25, 1983, OPM published a notice of final rules and regulations which modified criteria for determining a federal employee's exemption status under the FLSA. 48 Fed.Reg. 49,494 (Oct. 25, 1983). The regulations purported to define those classes of employees who would be considered exempt from overtime eligibility. 5 C.F.R. pt. 551 (1986). The specific regulation relevant to the case at bar is 5 C.F.R. § 551.203(c). By its terms all employees classified at pay grades of GS–11 and above were to "be presumed to be exempt" from the overtime protection of the FLSA. *Id.* § 551.203(c) ("presumption regulation"). Agencies were permitted to request OPM to remove specific positions graded GS–11 or above from the exemption presumption. *Id.* § 551.207.

Implementation of these regulations was delayed, however, due primarily to riders on congressional appropriation bills that prevented OPM from using funds to issue the rules and due to the litigation concerning these riders. *See National Treasury Employees Union v. Devine,* 733 F.2d 114, 115–16 (D.C.Cir.1984). On August 30, 1985, OPM republished the regulations for implementation and they became effective on November 1, 1985. 50 Fed.Reg. 35,529 (1985).

Soon after the regulations took effect, their legality was challenged. In *American Fed'n of Gov't Employees, AFL–CIO v. Office of Personnel Management,* 821 F.2d 761 (D.C.Cir.1987) ("*AFGE*"), the United States Court of Appeals for the District of Columbia Circuit vacated and invalidated 5 C.F.R. § 551.203(c) along with various other OPM regulations. The court held that because the presumption regulation shifted the burden of proving exemption from the employer to the employee, it

was inconsistent with the FLSA. *AFGE,* 821 F.2d at 771.

On September 18, 1987, OPM issued an Interagency Advisory Group Memorandum advising personnel directors of other federal agencies of its concurrence with the Department of Justice's decision not to seek further review of the decision of the D.C. Circuit. OPM instructed agencies to apply the detailed exemption criteria that predated the presumption regulation in determining whether employees holding positions graded at GS–11 or above should be exempted from the overtime provisions of the FLSA. *See* Federal Personnel Manual System Letter ("FPM Letter") 551–7 (July 1, 1975). By an interim rule published on January 22, 1988, 53 Fed.Reg. 1739, OPM confirmed its previous advice and formally withdrew the presumption regulation.

Plaintiffs allege that they were exempted from the overtime provisions of the FLSA after November 1985 solely by operation of the presumption regulation. Further, they allege that their nonexempt FLSA status which predated the invalid regulations has not been restored, nor have they been paid any FLSA compensation for the overtime hours they have worked since November 1985.

On March 10, 1988, defendant filed a motion to dismiss, premised on the application of 29 U.S.C. § 259. That section protects an employer from liability if its failure to pay overtime was due to good-faith reliance on a regulation promulgated by "the Administrator of the Wage and Hour Division of the Department of Labor," even if the regulation is later invalidated. In an opinion dated September 13, 1988, the court rejected defendant's argument. The Federal Circuit declined to consider the question after it was certified pursuant to 28 U.S.C. § 1292(d)(2) (1982).

Plaintiffs' motion for partial summary judgment presents three independent arguments for why liability should be determined in their favor. First, they contend that the presumption regulation was the sole basis for conversion of these plaintiffs to exempt status, and that when that regulation was nullified, their status reverted to

"nonexempt." A corollary of this argument is plaintiffs' position that defendant cannot now argue that the 1985 decisions to convert them to "exempt" status were appropriate under 29 U.S.C. § 213(a), even though those conversions might initially have been done for the wrong reason.

The second ground offered for summary judgment is plaintiffs' contention that they are compensated on an hourly basis and thus cannot be considered exempt from the FLSA. The third basis is that the plaintiffs are all in technician-type jobs which they assert have traditionally been treated as nonexempt in the private sector. After carefully reviewing the respective proposed findings of fact, the responses, documentary evidence, affidavits, and the relevant law, the court finds that the record does not permit a ruling on summary judgment as to the second[1] and third[2] issue. There are numerous fact questions which are still disputed. Because most of these were identified by the court during oral argument, they will not be repeated here.

On the first issue raised, however, the court has carefully compared the proposed findings and respective responses, and finds that despite defendant's challenge to many of the plaintiffs' proposed findings, enough facts are stipulated to permit resolution on summary judgment of plaintiffs'

theory that they are automatically entitled to overtime pay by virtue of nullification of the presumption regulation.

The facts set forth below are indisputable with respect to most of the plaintiffs. It is not necessary to identify the isolated individuals to whom these facts do not pertain. For purposes, therefore, of ruling on ground one of the motion for partial summary judgment, the court will refer to the group of plaintiffs to whom the relevant facts apply, as "plaintiffs".

Plaintiffs are more than 500 persons who are or were employees of the Government. Those persons were treated as nonexempt for purposes of overtime eligibility prior to November 1985. Because of instructions by OPM to implement the presumption regulation, the relevant employing agencies changed plaintiffs' personnel records to reflect their overtime status as "exempt". Despite the nullification of the presumption regulation, virtually none of the employing agencies have re-examined the overtime status of the plaintiffs. Plaintiffs have therefore been treated as exempt from approximately November 1985 to the present. While some plaintiffs have been promoted or otherwise had job changes since November 1985, the majority remain in the same positions and grades they held at that time.

1. Department of Labor regulations provide that only salaried employees may be treated as exempt "executives". 29 C.F.R. §§ 541.117, 541.-118 (1988). Plaintiffs contend that these regulations apply to federal workers as well. Initially, the court is not persuaded, at least on the existing record, that plaintiffs have established, based on undisputed facts, that they are all paid on an hourly basis. While this issue would seem to be primarily one of law, the court agrees with defendant that the mere allegation that General Schedule employees have their leave calculated on an hourly basis is not sufficient. Even the Letter Ruling of the Department of Labor, Wage and Hour Division (July 16, 1986), indicates that the exemption is only lost for the workweek in which the deduction is made, and that occasional deductions for excess leave do not undercut exempt status. More importantly, the plaintiffs have not convinced the court that private sector regulations and case law dealing with this issue apply full weight in the context of the Government's salaried wage schedules. See 5 U.S.C. § 5332. Because of the court's concern about the issue resolved in this opinion, the question of whether

plaintiffs are hourly employees, and whether that precludes application of the exemptions, was not aired at oral argument, and was not the subject of further briefing. Without prejudice to plaintiffs raising the issue again, this ground for partial summary judgment is denied.

2. As plaintiffs themselves point out in some detail in their motion, exemption determinations are fact-intensive inquiries which frequently turn on the particular duties of specific employees. See Walling v. General Industries, 330 U.S. 545, 550, 67 S.Ct. 883, 885, 91 L.Ed. 1088 (1947); Mitchell v. Williams, 420 F.2d 67, 69 (8th Cir.1969); Christenberry v. Rental Tools, Inc., 655 F.Supp. 374, 377 (E.D.La.1987), aff'd without opinion, 851 F.2d 1419 (5th Cir.1989); Pezzillo v. Gen. Tel. & Electron. Info. Systems, Inc., 414 F.Supp. 1257, 1268 (M.D.Tenn.1976), aff'd, 572 F.2d 1189 (6th Cir.1978); Hickman v. United States, 10 Cl.Ct. 550, 551 (1986); see also FPM Letter 551–7 ("Determinations as to the exempt or nonexempt status of a position ultimately rest on the actual duties of the position.").

## II. DISCUSSION

The parties' argument and factual presentations reflect very different views on what is the real issue before the court. Plaintiffs take the position that because their respective employing agencies converted their overtime classification to exempt solely due to the adoption of the invalid regulation, it then follows that this court must now re-convert them to their pre-presumption regulation status, which for virtually all of them was nonexempt. Under this construction, it is not relevant that the employing agencies might have been able to demonstrate that a particular employee should have been reclassified as exempt for some other statutorily-permissible reason. Their point is that virtually none of these employees have had their status determined without the taint of the defunct regulation. The unspoken assumption behind this argument is that plaintiffs must remain nonexempt until their agencies prospectively change their status without reliance on the presumption regulation or any subsequent OPM instructions which appear to rely on an analysis similar to the voided regulation.

Defendant takes the position that the real inquiry is whether plaintiffs are entitled to overtime pay. That is, does 29 U.S.C. § 213(a) legally bar them from overtime because they fill exempt positions? From this construction of the issue, the invalidation of the regulation is merely one piece of legal furniture on the stage. Defendant seeks the right to establish that the reclassification that took place contemporaneously with the adoption of the tainted regulation was correct. Regardless of the invalidity of the procedure for determining exemption, defendant contends that it should not be foreclosed from attempting to prove that plaintiffs are exempt because they serve in executive, administrative, or professional capacities.

The variations in the way the parties present the controlling issue result from their different views as to the effect of the nullification of the presumption regulation. The parties' statements of issues stand or fall on their assumptions about what happened when the D.C. Circuit voided the regulation.

The discussion in *AFGE* with respect to the presumption regulation is not extensive, and because of its importance to this case, it will be reproduced here:

The regulations challenged here conflict in important ways with the FLSA. To be sure, OPM's new regulations purport to exempt, as does the FLSA, only tightly defined executive, administrative, and professional employees from overtime eligibility. *See* 5 C.F.R. §§ 551.204, 551.205, 551.206 (1986). But these provisions are completely undermined by another regulatory section which states that "[a]ny employee properly classified at GS–11 or above [without regard to the nature of his duties] ... shall be presumed to be exempt [from overtime eligibility]." 5 C.F.R. § 551.203(c).

The regulations also purport to comply with the FLSA principle that employees are presumed eligible for overtime, affirming that "[t]he burden of proof [that an employee is exempt from overtime eligibility] rests with the agency that asserts the exemption." *See* 5 C.F.R. § 551.202(b) (1986). But this provision too is modified by another section that provides: "[a]n agency that properly classifies an employee at GS–11 or above shall be deemed to have satisfied the burden of proof for asserting an exemption." 5 C.F.R. § 551.203(c). Thus, while pledging fidelity to the FLSA in the "general principles" section of its overtime rules, OPM has, in the operative sections of those rules, undercut those very principles.

The conflict between the regulations and the FLSA is quite apparent in the case of the GS–11 employee who works as a skilled technician. Under the FLSA, technical employees are eligible for overtime, and OPM in the past recognized as much. *See* Federal Personnel Manual System Letter 551–7 21 (July 1, 1975). Yet the GS–11 grade encompasses employees who perform technical duties. *See* 5 U.S.C. § 5104(11) (1982). Under the new regulations, all GS–11 employees (including technicians) are presumed ine-

ligible for overtime compensation, and must, if their employing agency invokes the presumption to deny them overtime payment, file a complaint with OPM or file suit in the United States District Court. *See* Federal Personnel Manual System Letter 551–9 2 (March 30, 1976). Although OPM insists few government employees will suffer such inconvenience, and contends the presumption against their overtime eligibility is "easily rebuttable," OPM's position seems disingenuous. The regulations appear designed to make it difficult for the employee to rebut the presumption—at least to the satisfaction of the employing agency. Since the presumption appears to guide or direct the agency to act inconsistently with the FLSA and places an unwarranted and, at minimum, confusing burden on the employee, section 551.-203(c) is flawed and must be vacated as inconsistent with the "meaning, scope, and application" of the FLSA.

821 F.2d at 771.

The precise holding of *AFGE*, insofar as relevant here, was only that the presumption regulation was invalid. The regulation was subsequently withdrawn and thus cannot be utilized to defend classification of an employee as exempt. The court went no further, however. It is critical in this respect to focus on who the plaintiffs were in *AFGE*, and the nature of the relief they sought. The appeal in that case was a consolidation of separate actions commenced by three employee unions. The unions had sought preliminary and permanent injunctions in district court on the ground that the regulations challenged were adopted in violation of §§ 4 and 10(e) of the Administrative Procedure Act. 5 U.S.C. §§ 553, 706(2)(A) (1988). Those actions were thus not brought by individuals seeking to recover overtime pay or even to have their overtime status changed. The D.C. Circuit did not remand the case to the district court, and there is no suggestion in the language of the district court or the appellate court that part of the relief sought was reevaluation of any exemption determinations made pursuant to the regulation.

Plaintiffs urge that because the presumption regulation was invalidated, their classification must revert to their pre-November 1985 status. While plaintiffs are correct that the presumption regulation is a "nullity" it does not necessarily follow, however, that "the removal of that nullity necessarily restores the status quo ante as it existed prior to November, 1985." Plaintiffs' Motion for Partial Summary Judgment ("Motion") at 6. Rather, after careful consideration, the court concludes that plaintiffs' analysis is based on decisions which are not on point.

Plaintiffs cite *Ellis v. United States*, 228 Ct.Cl. 458, 657 F.2d 1178 (1981), for the proposition that the defendant is estopped from relying on the presumption regulation. The plaintiff in *Ellis* was a government-employed firefighter. He had retired, but then returned to work because of an incorrect ruling by the Civil Service Commission denying him an annuity on the ground that he was not a firefighter. Having succeeded in reversing the annuity ruling, he sought recovery of the payments he had been denied. The trial judge ruled that 5 U.S.C. § 8344 mandated that any recovery be offset by payment into the retirement and disability fund. The Court of Claims reversed, holding that § 8344 did not apply. While the court makes the observation that "[t]his defense seems to have sprung like a phoenix from the ashes of defeat," 228 Ct.Cl. at 460, 657 F.2d at 1180, it did not reject the Government's argument on that basis. Rather, it considered the applicability *vel non* of the statute on its merits, and concluded that the trial judge was wrong. The specific ruling was one of statutory construction. The court held that § 8344 does not apply when an annuitant has been improperly denied payments and is retroactively treated as eligible. Contrary to plaintiffs' suggestion here, *Ellis* does not stand for the proposition that a statutory requirement, otherwise applicable, cannot be asserted after administrative action is reversed on other grounds. If anything, the decision carries the opposite suggestion, namely, that entitlement to statutory benefits or

pay has to be tested against whatever requirements apply.

There is, perhaps, a more important reason that plaintiffs' use of *Ellis* is inappropriate. The defendant does not need to be estopped from using the defunct regulation because it does not seek to do so. From defendant's perspective, although the issue of the overtime status of these employees must be decided without benefit of the presumption, it must still be decided. It cannot be assumed that the act of reclassification was wrong in a legal sense, despite the fact that it was done for the wrong reason.

For the same proposition (that new reasons for taking administrative action cannot be subsequently assigned) plaintiffs also point to *SEC v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577–78, 91 L.Ed. 1995 (1947) (*Chenery II*). In *Chenery II*, the Court was reviewing a decision of the SEC concerning the allowability of a proposed plan of reorganization. The dispute had already been to the Court once before, at which time the Court held that the SEC was in error in approving the reorganization based on certain perceived court-made law. *SEC v. Chenery Corp.* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (*Chenery I*). The case was before the Court after a decision by the Commission on remand in which it rejected the reorganization plan, but this time for what the Commission felt were inconsistencies with the governing statute. The threshhold issue raised by the second appeal was whether the SEC could announce a new interpretation or rule in a pending case which had retroactive as well as prospective effect. The Court held that it could and sustained the Commission's new decision. The result in *Chenery II* thus seems entirely consistent with what defendant urges here.

The plaintiffs point, however, to language in *Chenery II* in which the Court describes the result in *Chenery I:*

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.

332 U.S. at 196, 67 S.Ct. at 1577. There are two reasons this language does not bar the defendant from contesting the plaintiffs' eligibility for overtime here. First, the plaintiffs are overreading the Court's analysis. The first decision merely holds that, when an administrative decision is supported explicitly by only one rationale, the courts will not look to independent grounds to sustain the decision if it is judicially challenged. If the Court were holding that a new reason could never subsequently be assigned to support an administrative decision, the result in *Chenery II* cannot be explained.

The second reason that holding is not relevant here has to do with the difference between the two types of decisions being reviewed. The administrative actions being reviewed in *Chenery* were orders approving or disapproving of reorganization plans submitted by particular applicants. The SEC's actions were in the nature of adjudications, and the Court treated its review in part as a review of the announcement of a new rule. The standard of review to which the Court held itself was that which applied to "ordinary administrative action." The Court continued: "The wisdom of the principle is none of our concern. Our duty is at an end when it becomes evident that the Commission's action is based upon substantial evidence and is consistent with the authority granted by Congress.... The facts being undisputed, we are free to disturb the Commission's conclusion only if it lacks any rational and statutory foundation." 332 U.S. at 207, 67 S.Ct. at 1582 (citations omitted). This is consistent with the language quoted above, which limits the holding to situations in which the court reviews determinations "which an administrative agency alone is

authorized to make." *Id.* at 196, 67 S.Ct. at 1577.

By contrast, the question of FLSA exemption status has not been committed exclusively to agency determination. Indeed, this court's jurisdiction in cases brought to recover lost overtime wages under the FLSA is not a review of an administrative action. It is a *de novo* proceeding under the Tucker Act, 28 U.S.C. § 1491(a)(1), and under 29 U.S.C. § 207(b). As defendant correctly expresses the inquiry in a typical FLSA action brought before this court, the question is whether the employee or employees are or are not exempt from overtime pay requirements. *See, e.g., Amos v. United States,* 13 Cl.Ct. 442, 445 (1987); *Hickman v. United States,* 10 Cl.Ct. 550, 551 (1986). The plaintiff merely has to show that he or she is an employee covered by the FLSA, and the burden shifts to defendant to justify the exempt status. The complaint can be filed without there having been an administrative adjudication or record developed comparable to the circumstances in a typical Administrative Procedure Act-type review. Evidence can be taken at a trial, and there is no presumption of correctness attached to the classification by the agency.

In *Kirschbaum Co. v. Walling,* 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638 (1942), the Court noted the uniqueness of the judicial role under the FLSA:

> In this task of construction [of the FLSA], we are without the aid afforded by a preliminary administrative process for determining whether the particular situation is within the regulated area. Unlike the Interstate Commerce Act and the National Labor Relations Act and other legislation, the Fair Labor Standards Act puts upon the court the independent responsibility of applying *ad hoc* the general terms of the statute to an infinite variety of complicated industrial situations.

*Id.* at 523, 62 S.Ct. at 1120. The Court further amplified this difference in *10 East 40th St. Co. v. Callus,* 325 U.S. 578, 580, 65 S.Ct. 1227, 1228, 89 L.Ed. 1806 (1945), *reh. denied,* 326 U.S. 686 (1945): "Thus, Congress withheld from the courts the.... benefit of a prior judgment, on vexing and ambiguous facts, by an expert administrative agency." *Id.* 325 U.S. at 580, 65 S.Ct. at 1228 (citations omitted).

The present action, although prompted by a judicial change in regulations governing the procedure for determining exemption status, still must be viewed as a claim for backwages under section 7. That is, are, or were, plaintiffs covered employees, and if so, has the defendant demonstrated that they are exempt? The inquiry therefore cannot be framed, as plaintiffs wish, in terms of whether the Government should have followed up the *AFGE* decision with specific affirmative action.

Nor is the Supreme Court's decision in *Greene v. United States,* 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964), helpful to plaintiffs. *Greene* was an employee of a private corporation. He had been discharged because his job depended on having a government-issued security clearance, and that had been revoked. The Government's action in revoking the clearance was reversed, *Greene v. McElroy,* 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), and the action was back before the Court on the issue of entitlement to damages for lost earnings. The agency had refused to consider Greene's claim under a 1955 regulation, but offered to consider his claim under a then-current 1960 regulation, pursuant to which Greene would have had to re-establish eligibility for a clearance. The Court holds that the 1960 regulation could not be given retroactive effect; that Greene's entitlement, if any, was fixed by the 1955 regulation. In making this ruling, the Court states that the "final judicial order reinstated the last valid administrative determination," namely that Greene was entitled to a security clearance.

In applying *Greene* here, plaintiffs conclude that "[o]nce the unauthorized regulatory action of OPM is removed from the picture, the last legally cognizable determination is the pre-November, 1985 assessment of the plaintiffs as nonexempt under the FLSA." Motion at 8. Once again, the plaintiffs' view of the effect of *AFGE* re-

sults in a missapplication of the cited case. In *Greene*, there had been a judicial determination as to a particular individual that a personnel action was invalid. The courts had determined that the revocation of his security clearance was improper. There was a specific point in time to which Greene could point from which restitution should be calculated. As of that time his security clearance was judicially reinstated by virtue of the nullification of the agency's action in rescinding the clearance. The effect of *AFGE* is not comparable. The analogous judicial determination here is that the presumption regulation is unenforceable. There has been no comparable application of that fact to a particular personnel action. It is important in this connection to note that Greene demonstrated that the process of evaluating his entitlement to a clearance was constitutionally defective. In other words, the substantive right at issue—the entitlement to the clearance—was directly at stake. The analogous issue here would be whether a particular employee is or is not exempt from overtime coverage. *That issue has not been addressed.* All that has thus far occurred is that OPM has been instructed that it cannot rely on the presumption regulation. The question of entitlement to overtime pay has not been adjudicated.

This is easily demonstrated. If a given GS–11 employee had been overlooked in the implementation of the presumption regulation—that is, if his personnel records were unaltered and no form SF–50 had been issued to change him from nonexempt to exempt—neither the adoption of the regulation nor its nullification in *AFGE* would have affected him. Such an employee would have no claim. The relevant administrative act in this case, therefore, is not a particular agency's reliance on the presumption regulation, it is conversion on the employee's personnel records of his status from nonexempt to exempt. It does not logically follow, just because OPM adopted the ill-fated regulation, that a given employee is nonexempt. The employee's correct status is an issue which must still be addressed.

The validity of defendant's position is also shown by reflection on what would have occurred if plaintiffs had brought their suit here without benefit of the previous ruling in *AFGE*. In the context of determining whether the plaintiffs were exempted by 29 U.S.C. § 213(a), the court would have been confronted with the presumption regulation. Assuming the same result would have been reached here as in *AFGE*, the inquiry then would have shifted to whether the exempt status could have been supported under more general pre-existing guidelines.

Plaintiffs also cite *Rodriguez v. Taylor*, 569 F.2d 1231, 1238 (3rd Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), for the proposition that employees who succeed in overturning unlawful conduct by their employer are entitled to be in the same economic position they would have enjoyed but for the employer's conduct. Further they rely on *Lorillard v. Pons*, 434 U.S. 575, 584–85, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978), and *Wirtz v. Malthor, Inc.*, 391 F.2d 1 (9th Cir.1978), for the argument that the FLSA mandates that employers shall be liable for improperly withheld wages. These citations, while correct, are premature. Thus far there has been no determination that wages have been improperly withheld. The plaintiffs will have the opportunity, in this action, to demonstrate that they were improperly maintained in an exempt status. If they succeed, they will be entitled to back wages. If defendant demonstrates, however, that a given employee was in an exempt position in November 1985, and thereafter, then the fact that OPM unlawfully adopted the presumption regulation is irrelevant. That fact cannot bestow a legislatively prescribed entitlement on someone not otherwise entitled to it.

The court holds that defendant can attempt to demonstrate that the conversions of these employees to exempt status was legally correct. In so holding, the court is fully aware that this could necessitate proof as to each plaintiff. The court will look to the parties to suggest ways to streamline adjudication of the plaintiffs' asserted entitlement to overtime pay.

## CONCLUSION

Plaintiffs' motion for partial summary judgment is denied. The parties are directed jointly to file a status report on or before December 5, 1989, proposing further proceedings, including discovery and resolution of the issue of whether plaintiffs' status as hourly or salaried employees is material.