James A. ALBRIGHT, et al.

v.

The UNITED STATES.

Nos. 268–84C, 400–84C, 316–85C, 526–87C.

United States Claims Court.

Sept. 11, 1992.

As Amended Sept. 23, 1992.

Alan Banov, Washington, D.C., for plaintiff.

Patrick W. Johnson, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, for defendant.

## ORDER

YOCK, Judge.

This civilian overtime and premium pay dispute is before the Court on the defendant's motion to dismiss for lack of jurisdiction filed on June 4, 1990. For the reasons stated herein, defendant's motion is granted in part and denied in part.

### Facts

All the plaintiffs in this case are guards employed by the United States Department of Justice, Bureau of Prisons (BOP). The

dispute centers around entitlement to overtime, night differential, Sunday premium, and holiday pay. Plaintiffs contend that they were not compensated for the approximately twenty minutes per day they spent performing preshift and postshift duties such as attending roll call, checking out and returning items like keys and weapons, and briefing the next shift. Plaintiffs claim that these duties, which were actually, but not officially, part of their principal work and the time spent in performing them, were more than *de minimis*. Therefore, they claim that they are entitled to overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219 (1988), and overtime, night differential, Sunday premium, and holiday pay under the Federal Employees Pay Act (FEPA), 5 U.S.C. §§ 5542, 5544, 5546 (1988).

This case is actually a consolidation of four class action suits.[1] All plaintiffs are present or former members of a union, the American Federation of Government Employees AFL–CIO (AFGE). All are, or were previously, bound by collective bargaining agreements between the AFGE and the BOP. These agreements contained grievance arbitration provisions which allowed employees to grieve their wage claims by submitting them to arbitration.

The first collective bargaining agreement was reached before the effective date of the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 91 Stat. 1111, which was January 11, 1979. This agreement covered the period from June 1, 1978 to November 30, 1979, but apparently remained in effect until a new collective bargaining agreement was reached on September 15, 1981.

This 1978 agreement contains Article Twenty-nine which summarizes the grievance procedure. According to Article Twenty-nine's provisions, its purpose was to "provide the exclusive procedure for the consideration and resolution of grievances" while only excluding "statutory appeal procedures and matters excluded from mandatory negotiations by Executive Order 11491 * * *." The Executive order directed that such appeal procedures could not cover matters for which there was a statutory appeal procedure. The September 15, 1981, collective bargaining agreement and all subsequent agreements contained broadly written grievance and arbitration procedures that allowed grievances to be submitted on any matters that would be properly grievable under the section 7121 of the CSRA.

In their complaint before this Court, the plaintiffs assert that, for various reasons, their claims do not have to be grieved under the collective bargaining agreement and that they can sue for recovery directly in this Court. The defendant counters that the CSRA, which comprehensively overhauled the pre-existing structure for handling claims by federal employees, bars all but one category of plaintiffs from bringing suit directly in this Court for claims arising during the course of their employment.

## Discussion

■ As an initial matter, this Court must decide whether the amounts of time claimed by the plaintiffs are sufficient to

---

1. The case originated on August 8, 1983, in a complaint filed by 329 plaintiffs in the United States District Court for the District of Columbia as *Kelley v. United States*, Civ. A. No. 83–2294 (D.D.C.). Since that court lacked jurisdiction, the case was transferred to this Court on May 7, 1984. On June 26, 1984, plaintiffs filed an amended complaint in this Court, so that the *Kelley* case was now *Adkins v. United States*, No. 268–84C. Shortly after, on August 3, 1984, a related case, *Adams v. United States*, No. 400–84C, was filed and consolidated with *Adkins*. These two cases were then consolidated with *Allison v. United States*, No. 316–85C, which was filed by 143 new plaintiffs on May 28, 1985.

These cases were in turn consolidated with *Abernethy v. United States*, No. 526–87C, filed by 307 plaintiffs on August 25, 1987.

The complaints were amended periodically to reflect the Court's rulings as to which plaintiffs should remain in the suits. Those plaintiffs who failed to timely submit completed questionnaires were dismissed. Accordingly, on September 11, 1987, amended complaints were filed on behalf of 224 plaintiffs in *Albright* (formerly *Adkins*) and 353 plaintiffs in *Adams*. On April 10, 1989, fourth amended complaints were filed on behalf of 224 plaintiffs in *Albright*, 354 plaintiffs in *Adams*, and 127 plaintiffs in *Allison*.

warrant an award of overtime pay. Based on *Abrahams v. United States,* 1 Cl.Ct. 305 (1982), the time expended each day must be at least ten minutes or more; anything less is considered *de minimis* and will not support an award of overtime pay. *Abrahams,* 1 Cl.Ct. at 311. If plaintiffs can prove that the uncompensated time was over ten minutes per day, they then can overcome the *de minimus* hurdle.

Turning to the major issues in this case, this Court must keep in mind that the CSRA is "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations * * *." *Bush v. Lucas,* 462 U.S. 367, 388, 103 S.Ct. 2404, 2417, 76 L.Ed.2d 648 (1983). Additionally, the CSRA's "integrated scheme of administrative and judicial review" has been interpreted to foreclose an avenue to the courts that, prior to enactment of the CSRA, had been open to federal employees by statute. *Carter v. Gibbs,* 909 F.2d 1452, 1456 (Fed. Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). Congress, through the CSRA, "narrowly circumscribed the role of the judiciary in its carefully crafted civil service scheme." *Id.*

The main provision of the CSRA concerning grievance procedures is 5 U.S.C. § 7121(a)(1) and (2) (1988). It reads as follows:

(a)(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d) and (e) of this section, the procedures shall be the exclusive procedures for resolving grievances which fall within its coverage.

(2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

Thus, the issue is whether the exclusive grievance procedure mandated by section 7121 of the CSRA, as construed by the United States Court of Appeals for the Federal Circuit in *Carter,* and *Harris v. United States,* 841 F.2d 1097 (Fed.Cir.

1988), compels dismissal of the claims of all the plaintiffs. In short, the answer is yes for those plaintiffs who were part of a bargaining unit covered by a collective bargaining agreement when their claims arose.

▪ According to the Federal Circuit in *Carter,* a collective bargaining agreement must specifically exclude FLSA overtime issues to preserve judicial review of overtime claims. *Carter,* 909 F.2d at 1458. The CSRA, 5 U.S.C. § 7121, requires that issues that are not specifically excluded in the agreement have to be brought under the negotiated grievance procedure specified in the agreement. Thus, the overtime issues which were not excluded must be pursued under the negotiated grievance procedures, and review in the courts is not allowed. *Carter,* 909 F.2d at 1455. The collective bargaining agreements between plaintiffs' union, the AFGE, and plaintiffs' employer, the BOP, did not specifically exclude FLSA or FEPA overtime issues. Plaintiffs do not dispute that this pay dispute is a "grievance" within the meaning of the CSRA, 5 U.S.C. § 7103(a)(9) (1988). But, while *Carter* is clearly binding precedent on this Court, it is only obviously dispositive with respect to some of the plaintiffs here.

Plaintiffs appear to fall into four categories based on their employment status and the collective bargaining agreement under which they are covered. Also, this Court notes that some plaintiffs may come under more than one category. The first category covers plaintiffs whose claims arose after September 15, 1981, the date of the first collective bargaining agreement reached after the effective date of the CSRA, and who are still covered by the collective bargaining agreements that the AFGE and the BOP reached after the effective date of the CSRA, and who were never supervisors. The second category covers plaintiffs whose claims arose before the September 15, 1981, collective bargaining agreement was executed. The third category covers plaintiffs who are no longer members of the AFGE. The fourth category covers plaintiffs who were excluded from coverage of the collective bargain-

ing agreement because they were supervisors. For purposes of analysis, this Court will consider each category separately.

 Category 1. Plaintiffs whose claims arose *after* September 15, 1981, who are still covered by the collective bargaining agreements between AFGE and BOP that were reached after the effective date of the CSRA, and were never supervisors or otherwise excluded from the collective bargaining agreements.

While *Carter* dealt only with claims brought under the FLSA, this Court believes the rationale is equally applicable to claims brought under the FEPA. Regardless of whether or not the claim is for overtime pay under the FLSA, or overtime, night differential, premium, or holiday pay under the FEPA, the issue is the CSRA's preemption of Claims Court jurisdiction over these type claims by federal employees. As the Federal Circuit held in *Carter*, the CSRA made grievance procedures contained in collective bargaining agreements the *exclusive* method of resolving disputes between the parties to those agreements. If the union and the employer chose not to exempt pay disputes from their negotiated grievance process, the court has no jurisdiction over the dispute. *Carter*, 909 F.2d at 1458. In this case, the AFGE and the BOP did not exempt pay disputes from the collective bargaining agreement they signed in September, 1981. Thus, this group of plaintiffs is essentially identical to those in *Carter*, and their claims, which arose after September 15, 1981, must be dismissed in view of the court's decision in that case.

 Category 2. Plaintiffs whose claims arose *before* September 15, 1981, the date of the first collective bargaining agreement concluded by the AFGE and the BOP after the enactment of the CSRA.

According to the plaintiffs, a number of them seek back pay for work they performed before the effective date of the CSRA and before the first collective bargaining agreement concluded under the CSRA. Plaintiffs aver that it would be inappropriate, unfair, and possibly unconstitutional to apply the *Harris* and *Carter* interpretations of 5 U.S.C. § 7121 retroactively because this Court previously recognized these claims under pre-existing statutes, the FEPA and the FLSA.

Defendant asserts that the CSRA clearly reflects Congress' intent that the statute be applied in all cases that were not already pending. The Government submits that the CSRA was a rational means to further a legitimate legislative purpose: narrowing the role of the judiciary and elevating the role of the arbitrator in resolving disputes between the Government and its employees. Therefore, its retroactive application was intended by Congress and is constitutional.

The issue of retroactive application of the CSRA, 5 U.S.C. § 7121, to grievance procedures should first be approached by looking for whatever guidance the CSRA itself may provide. Two other sections of the CSRA, 5 U.S.C. § 7135 (1988) and a note to 5 U.S.C. § 1101 (1988) labeled "Savings Provision," Act of Oct. 13, 1978, Pub.L. No. 95–454, Title IX, § 902, 92 Stat. 1223 (effective 90 days after Oct. 13, 1978, as provided by section 907 of such Act), offer some guidance.

The section of the CSRA entitled "Continuation of existing laws, recognitions, agreements, and procedures," 5 U.S.C. § 7135, reads as follows:

 (a) Nothing contained in this chapter shall preclude—

 (1) the renewal or continuation of an exclusive recognition, certification of an exclusive representative, or a lawful agreement between an agency and an exclusive representative of its employees, which is entered into before the effective date of this chapter; or

 (2) the renewal, continuation, or initial according of recognition for units of management officials or supervisors represented by labor organizations which historically or traditionally represent management officials or supervisors in private industry and which hold exclusive recognition for units of such officials or supervisors in any

agency on the effective date of this chapter.

(b) Policies, regulations, and procedures established under and decisions issued under Executive Orders 11491, 11616, 11636, 11787, and 11838, or under any other Executive order, as in effect on the effective date of this chapter, shall remain in full force and effect until revised or revoked by the President, or unless superseded by specific provisions of this chapter or by regulations or decisions issued pursuant to this chapter.

Section 7135(b) refers to an Executive order, Exec. Order No. 11,491, 3 C.F.R. 861 (1966–1977), *reprinted as amended in* 5 U.S.C. § 7101 note (1988), which applied to the pre-CSRA bargaining agreement. Under section 7135(b), this Court must see if the Executive order has been superseded by a specific provision of the CSRA, namely 5 U.S.C. § 7121. Section 13 of Exec. Order No. 11,491 provided that:

(a) An agreement between an agency and a labor organization shall provide a procedure, applicable only to the unit, for the consideration of grievances. The coverage and scope of the procedures shall be negotiated by the parties to the agreement with the exception that it may not cover matters for which a statutory appeal procedure exists * * *.

In considering section 7135(b) and Exec. Order No. 11,491, plaintiff urges us to follow the holding of *Amos v. United States,* 22 Cl.Ct. 724 (1991). In that case, the Court examined 5 U.S.C. §§ 7121, 7135, Exec. Order No. 11,491, and a Federal Labor Relations Authority (FLRA) decision that interpreted Exec. Order No. 11,491. The FLRA decision dealt with section 7135 and its relation to section 13 of the Executive order in *Interpretation and Guidance,* 2 F.L.R.A. 274 (1979). It found that, while section 7121 superseded Exec. Order No. 11,491, under section 7135(a) the pre-existing collective bargaining agreement still controlled until it was changed by the parties. Thus, section 7121 of the CSRA was not applied retroactively because, under section 7135(a), the agreement continued until renegotiated by the parties.

The *Amos* court gave deference to the FLRA decision as being consistent with the statute and congressional policy. FLRA decisions are entitled to deference because of the FLRA's expertise in the area of labor law. However, the Supreme Court also cautioned reviewing courts against adopting administrative decisions that they believe to be inconsistent with a statutory mandate or the congressional policy underlying a statute. *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Auth.,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983); *NLRB v. Brown,* 380 U.S. 278, 291–292, 85 S.Ct. 980, 988–989, 13 L.Ed.2d 839 (1965). After a review of the relevant case law, it appears to this Court that the administrative decision of the FLRA was contrary to the congressional policy underlying the CSRA. Therefore, this Court respectfully disagrees with the *Amos* decision, which was based upon the FLRA decision, and holds that the CSRA made the grievance procedures in the collective bargaining agreement the exclusive method of redress for claims brought after the enactment of the CSRA, even if those claims arose during the course of employment before the enactment of the CSRA.

The defendant argues that *Carter* and *Harris,* along with the note to 5 U.S.C. § 1101 labeled "Savings Provision," show that it was Congress' intent that the CSRA be applied retroactively in all but a narrow category of cases. The Savings Provision of 5 U.S.C. § 1101 note states that no provision of the CSRA "shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted." The Merit Systems Protection Board promulgated a regulation, 5 C.F.R. § 1201.191(b) (1988), that says "pending" in the Savings Provision means agency proceedings and appeals that were subject to judicial review or under judicial review on the date the CSRA became effective. In *Wilson v. Turnage,* 791 F.2d 151, 155–56 (Fed.Cir.), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93

L.Ed.2d 583 (1986), and *Oliveira v. United States*, 827 F.2d 735, 737 (Fed.Cir.1987), the Federal Circuit held that this Court is governed by that regulation in applying the Savings Provision.

Based on this regulation, it is clear that the plaintiffs' claims were not pending on or before the effective date of the CSRA and do not escape application of the CSRA under the Savings Provision. Relying on *Department of the Air Force v. Federal Labor Relations Auth.*, 775 F.2d 727 (6th Cir.1985), and *Denton v. Merit Sys. Protection Bd.*, 768 F.2d 422 (D.C.Cir.1985), the defendant avers that the Savings Provision indicates Congress' intent that only pending cases were saved from the retroactive effect of the CSRA and that inchoate claims, such as those of the plaintiffs, were subject to the CSRA, even if they arose before its effective date. This Court agrees with the defendant's interpretation of *Denton*. In that case, the court examined the Savings Provision of the CSRA and its limitation to actions that were already pending as of the enactment of the CSRA. The court reasoned that the CSRA preserved the pre-existing remedies only for claims which were already filed at the time of enactment and that any claims which were not yet filed, but in existence, were subject to the new procedures embodied in the CSRA. Otherwise, as the court noted,

> Under the parties' jurisdictional view, however, there is no end in sight to federal district court jurisdiction over agency personnel actions so long as employees seek to challenge an agency action taken prior to the CSRA's effective date. This would be, when all is said and done, a rewriting of the savings clause, at great cost to the orderly administration of justice which Congress sought to effectuate in the FCIA. That is to say that the savings clause language, "any administrative proceeding pending," would otherwise be twisted to mean, "any agency action taken prior to the CSRA's effective date, regardless of when that action was first challenged by the employee."

*Denton*, 768 F.2d at 425. *See also, Department of the Air Force*, 775 F.2d at 734

(because claim was not a pending administrative proceeding at the time of the enactment of the CSRA, the claim is not insulated from the application of the CSRA by the savings clause).

Thus, under the reasoning of *Denton*, because Congress did not specifically exempt inchoate claims from the provisions of the CSRA, but did specifically exempt pending claims, Congress intended the inchoate claims to be subject to the provisions of the CSRA, including the exclusive remedies for grievances. Several cases support the view that, due to the comprehensive nature of the CSRA, the absence of a provision in the CSRA for direct judicial review for certain actions is evidence of Congress' intent that no direct judicial review of these actions be available, even though it was previously available before the enactment of the CSRA. *See also Pinar v. Dole*, 747 F.2d 899, 910 (4th Cir. 1984), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985) ("The absence of a provision for direct judicial review of prohibited personnel actions among the carefully structured remedial provisions of the CSRA is evidence of Congress' intent that no judicial review in district court be available for the actions involved in this case."); *Carducci v. Regan*, 714 F.2d 171, 174 (D.C.Cir.1983) (failure to include some types of personnel action within the remedial scheme of so comprehensive a piece of legislation reflects a congressional intention that no judicial relief be available).

In *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), the Supreme Court had to determine whether, under the CSRA, the "withholding of remedy was meant to preclude judicial review for those employees, or rather merely to leave them free to pursue the remedies that had been available before enactment of the CSRA." *Id.* at 443–444, 108 S.Ct. at 672. The Court found that, based on the legislative history of the statute,

> A leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the "outdated patchwork of statutes and rules built up

over almost a century" that was the civil service system * * *.

*Id.,* 484 U.S. at 444, 108 S.Ct. at 672. Accordingly, Congress replaced the old patchwork system with the CSRA, which is "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445, 108 S.Ct. at 672. Thus, based on the context of the entire statutory scheme, the Supreme Court determined that the failure of the CSRA to provide certain employees a judicial remedy displayed a clear congressional intent to deny those employees such judicial review. *Id.* at 447, 108 S.Ct. at 673.

Defendant has made a strong argument based on *Carter* and *Harris* that the CSRA closed an avenue to the courts that was previously open to federal employees, *Carter,* 909 F.2d at 1456, and that, unless the claim satisfies the Savings Provision of 5 U.S.C. § 1101 note, this Court should not reopen this avenue. Following the guidance of the Supreme Court in *Fausto,* and the views of the courts in *Denton, Carducci,* and *Pinar,* this Court holds that, although before the CSRA the plaintiffs could choose not to grieve their pay dispute and bring that dispute directly before this Court, this avenue of redress did not survive the enactment of the CSRA. This is because the CSRA made mandatory the grievance procedures in the collective bargaining agreement between the AFGE and the BOP. The previous right to judicial review was preserved by the Savings Provision *only* for claims which were already pending at the time of the CSRA's enactment. Therefore, the grievance procedure in their collective bargaining agreement is plaintiffs' sole recourse, and it applies to claims which arose before enactment of the CSRA, but which were inchoate at the time of the CSRA's enactment and thus were not exempted from the effect of the CSRA under its Savings Provision.

■ However, this does not fully dispose of these plaintiffs' claims because they may pursue those avenues of redress provided in their 1979 collective bargaining agreement. Article Twenty-nine of the 1979 agreement required that all claims be grieved except for statutory appeal procedures and matters excluded from mandatory negotiations by Exec. Order No. 11,491. As noted earlier, the Executive order provided that the collective bargaining agreement could not cover matters for which a statutory appeal procedure exists. Thus, if the plaintiffs' claims were ones that had a statutory appeal procedure in place for their resolution, then these claims did not have to be grieved under the collective bargaining agreement.

In *Beall v. United States,* 22 Cl.Ct. 59 (1990), the Court considered whether, under the CSRA, the exclusion from grievance procedures of claims for which a statutory appeal or complaint system has been implemented preserved the jurisdiction of the United States Claims Court over FLSA violations. The *Beall* court determined that this Court's jurisdiction over such violations did not constitute a statutory appeal or complaint system because, first, plaintiffs' claims have not yet been addressed so there is no appeal to this Court and, second, the generalized jurisdictional grant for such violations "hardly constitutes a complaint system." *Beall,* 22 Cl.Ct. at 61. Instead, the court found that "the exclusion was a reference to well-defined, statutorily articulated procedures for resolving complaints, such as those heard by the Equal Employment Opportunity Commission, the Merit Systems Protection Board, and the Federal Labor Relations Authority." *Id.* (Footnotes omitted.) Also, the Court determined that *Carter* requires that an exclusion from grievance procedures be specific and that the plaintiffs' interpretation of the exclusion for claims subject to statutory appeals and complaint systems was far too broad in that it "would exclude from the grievance procedure virtually any dispute that could be brought in another forum." *Id.*

The plaintiffs urge this Court to follow the *Amos* case, which held that FLSA claims had a right of statutory appeal to the Civil Service Commission (CSC) and so did not have to be grieved under the collec-

tive bargaining agreement. *Id.*, 22 Cl.Ct. at 733. The court in *Amos* reasoned that, because claimants had a statutory appeal available to the CSC for FLSA claims, the Claims Court had jurisdiction over these FLSA claims, even after the CSRA, because, before the CSRA, the claimants could also have chosen not to pursue the statutory appeal and instead sued directly in federal court. *Id.* However, this Court finds such reasoning too expansive and instead agrees more with the specific inquiry of the court in *Beall;* namely, is a suit in the Claims Court a statutory appeal procedure? Based on the reasoning in *Beall,* the answer is clearly no. This view also has strong support in *Fausto,* where the Supreme Court noted that before the CSRA, "employees sought to appeal the decisions of the CSC, or the agency decision unreviewed by the CSC, to the district courts through the various forms of action traditionally used for so-called *nonstatutory* review of agency action, including suits for mandamus * * *." *Id.*, 484 U.S. at 444, 108 S.Ct. at 672 (emphasis added). Thus, because a suit in the Claims Court is not part of a statutory appeal system, this Court does not have jurisdiction over the claims of this class of employees whose claims arose before the date of the first collective bargaining agreement concluded by the AFGE and the BOP after the enactment of the CSRA.

In summary, this Court does not have jurisdiction over the claims of the plaintiffs in Category 2. This is because, after the enactment of the CSRA, the grievance procedure in the plaintiffs' collective bargaining agreement became their sole avenue of redress for all claims, except for those that were already pending. However, the plaintiffs' claims were not pending, but were inchoate, at the time the CSRA was enacted. Under the terms of the collective bargaining agreement, its grievance procedure applied to all claims except for those for which a statutory appeal procedure exists. Because a suit in this Court is not part of a statutory appeal procedure, the exception to the mandatory grievance procedure does not apply, and the claims must be grieved. Thus, this Court must dismiss the claims of the plaintiffs in Category 2 for lack of jurisdiction.

Category 3. Plaintiffs who are no longer members of the AFGE.

Plaintiffs argue that employees who, through retirement, resignation, or dismissal, are no longer members of the AFGE cannot invoke the grievance arbitration procedure, and thus, *Carter* should not apply. The Government contends that the grievance provisions of the collective bargaining agreements have been interpreted both by the AFGE and the BOP to cover the grievances of former employees, and *Carter* applies in all its force. Furthermore, defendant submits that all these claims arose when plaintiffs had access to the grievance procedure and should have been grieved at that time.

A recent decision by the United States Court of Appeals for the Federal Circuit confronted this question directly. In the case of *Muniz v. United States*, 972 F.2d 1304, 1313 (Fed.Cir.1992), the court determined that an employee's claim that arose during the course of his employment under a collective bargaining agreement can only be removed from the grievance and arbitration process by the explicit agreement of the parties and that the termination of employee status does not exclude disputes from arbitration if the disputes concern rights that accrued during employment. *See also Aamodt v. United States*, 972 F.2d 1304, 1313 (Fed.Cir.1992) 976 F.2d 691, 692 ("[A] change in 'employee' status after a claim arises does not affect the applicability of the bargaining agreement under which the claim arose. In such circumstances the applicability of the agreement survives the change in status * * *.") Because the plaintiffs in this category are in the same position as the plaintiffs in *Muniz* and *Aamodt*, based on this new, clear precedent, their claims must be dismissed because this Court lacks jurisdiction to entertain such claims.

Category 4. Plaintiffs who were excluded from the coverage of the collective bargaining agreement.

■ Both parties agree that supervisors and other management officials are outside the collective bargaining unit, and, thus, they cannot file grievances under the AFGE contract. Therefore, *Carter* would not apply if those plaintiffs were supervisors for the entire time period during which their claims arose.

Since the parties agree that at least some plaintiffs in this group continue to have viable claims after *Carter*, the Court will not dismiss any of the supervisor claims at this point. Plaintiffs submit that none of the claims of the supervisors should be dismissed, including those claims that fall into Categories 1, 2, and 3, as long as the plaintiff also has Category 4 claims. Defendant stresses that 5 U.S.C. § 7121 provides that the only remedy for a plaintiff who has access to the grievance procedure is the procedure itself, and any claim for additional pay that arose while an individual plaintiff was not a supervisor is precluded. This Court agrees with the defendant and directs that only the claims of the Category 4 plaintiffs that arose while these plaintiffs were supervisors and out of the collective bargaining unit may continue in this Court. If a Category 4 plaintiff also has claims that fall into other categories, these claims are dismissed for the reasons given herein.

In an appendix to this order, Appendix A, this Court has listed all the Category 4 plaintiffs whose claims relating to their tenure as supervisors survive this motion to dismiss. The defendant has been unable to verify the claims of some of these plaintiffs, and the parties do not agree on the inclusion of all of these plaintiffs in Category 4. These disputed claims are noted in Appendix A, and they too will continue, subject to the parties' ability to prove the factual basis for their inclusion in this category.

The resolution of the issues involving the claims of supervisors will require particularly fact intensive determinations, such as when each plaintiff became a supervisor and when did the claim arise. Thus further factual ventilation would be beneficial. *Philadelphia Suburban Corp. v. United States,* 217 Ct.Cl. 705, 707 (1978). It is possible that *Hess v. IRS,* 892 F.2d 1019 (Fed.Cir.1989) will bar some of the claims, but the Court need not now reach that issue at this point. Also, as supervisors, the plaintiffs will have to prove their entitlement to overtime and other premium pay under the FEPA and the FLSA.

■ In addition, the plaintiffs should be aware that the statute of limitations will apply and may bar some plaintiffs' claims. Plaintiffs are claiming under the FEPA, which has a six year statute of limitations, 28 U.S.C. § 2501 (1988) and the FLSA, which has either a two or three year statutory limit. *See* 29 U.S.C. § 255(a) (1988) and *Hickman v. United States,* 10 Cl.Ct. 550, 552 (1986). To come under the three year statute, the plaintiffs must meet the test for willful violations of the FLSA. They must show that the BOP failed to pay overtime and that there is an "absence of a significant uncertainty whether the FLSA applies to cover an employee." *Hickman* 10 Cl.Ct. at 554.

In sum, the plaintiffs in this category must prove the basis for both their FEPA and FLSA claims. Therefore, the determination of which act and which statute of limitations will apply to any particular Category 4 (supervisor) claim is left for another day. Based on the guidelines given above, the parties should look to the timing and the types of claims in order to address the statute of limitations and other legal and factual issues raised.

## CONCLUSION

For the reasons stated above, the defendant's motion to dismiss is granted in part, and denied in part. This Court lacks jurisdiction over three of the four groups of plaintiffs, those who fall into Categories 1, 2, and 3. Those plaintiffs who are to be dismissed are listed in Appendix B. The Clerk is directed to enter judgment dismissing the complaints as to the plaintiffs listed in Appendix B, pursuant to Rule 54(b) of the United States Claims Court, there being no further just reason for delay. This Court *has* jurisdiction over the plaintiffs in Category 4 (see Appendix A), and the

claims of those plaintiffs are *not* to be dismissed and may proceed into discovery.

A status conference is hereby scheduled for 10 a.m., November 13, 1992, at the National Courts Building, Washington, D.C., in order that the parties may advise the Court as to how they plan to proceed with the remaining plaintiffs in these rapidly aging cases.

IT IS SO ORDERED.

## APPENDIX A

### Category 4 Plaintiffs

| DOCKET No. 268–84C<br>ALBRIGHT PLAINTIFFS | Parties Agree | Plaintiff Includes | Defendant Includes |
|---|:---:|:---:|:---:|
| 1. REGINALD LEWIS AMMONS | | | X |
| 2. DAVID R. BENSON | | | X |
| 3. MICHAEL D. BINION | | | X |
| 4. PATRICIA KAY BROWN | | X | |
| 5. NANCY BONITA CAMP | | X | |
| 6. JOHN F. CARR | | | X |
| 7. WALTER CLARK | | | X |
| 8. PAUL R. ELLEFSON | | X | |
| 9. GEORGE M. ELLIS, JR. | | | X |
| 10. JIMMY J. ERB | | | X |
| 11. BILL F. ESTELL | | | X |
| 12. BENNY D. FOREMAN | X | | |
| 13. SANDRA K. FREYTAG | | | X |
| 14. ROBERT A. GOEPFERICH | | X | |
| 15. ANTONIO L. GONZALEZ | | | X |
| 16. GAIL A. HARKRADER | | | X |
| 17. JEFFREY J. HARTMAN | | | X |
| 18. RODGER A. HENDRICKS | X | | |
| 19. LINDA JO HUFFMAN | | | X |
| 20. MICHAEL INGRAM | X | | |
| 21. LARRY K. JOHNSON | | | X |
| 22. RONALD F. KING | | X | |
| 23. ALVIN PAUKSTAT | X | | |
| 24. THOMAS E. PITTS | | X | |
| 25. R.E. POINDEXTER | | | X |
| 26. CARRIE A. SIMMONS | | X | |
| 27. VERN D. SJOBERG | X | | |
| 28. DAVID J. STEINER | X | | |
| 29. GARY R. SWINK | | | X |
| 30. PETER TUMBARELLO | X | | |
| 31. CLIFFORD A. YOUNG | X | | |
| 32. LEWIS E. ZIMMERMAN | | | X |

| DOCKET No. 400–84C ADAMS PLAINTIFFS | Parties Agree | Plaintiff Includes | Defendant Includes |
|---|---|---|---|
| 1. QUINCY B. ADAMS | | | X |
| 2. DANIEL J. ALBERTS | | X | |
| 3. HENRY ALVARADO | X | | |
| 4. MARK S. BEELEY | | | X |
| 5. NILES HOWARD BEHRENS | | | X |
| 6. LARRY L. BONNER | X | | |
| 7. MAURICE L. BROWN | | | X |
| 8. MICHAEL J. CALTABIANO | | | X |
| 9. BESSY K. CHILES | X | | |
| 10. MIKE Q. CHILES | X | | |
| 11. TYRONE CLAYBORN | | | X |
| 12. TOMMY C. COATS | | X | |
| 13. RAYLE H. CUELLAR | | | X |
| 14. RAYMOND ESCOBEDO | | | X |
| 15. CAROLYN A. FORTNER | | X | |
| 16. DONALD R. FULLER | X | | |
| 17. WILLIAM D. GERTH | X | | |
| 18. JOHN W. GOLD | | | X |
| 19. ROBERT FRANKLIN GOOCH | | | X |
| 20. BILLY D. HOWELL | | X | |
| 21. LESLIE M. HUNNEL | | X | |
| 22. RODNEY P. JONES | | | X |
| 23. RONALD L. JURY | | | X |
| 24. THOMAS P. KACKENMEISTER | | | X |
| 25. WARREN KANN | | | X |
| 26. GABOR KITKA | | | X |
| 27. SHEILA LASTER | | | X |
| 28. JAMES MILTON LECOUNT, JR. | | X | |
| 29. STEVEN D. LENTZ | | X | |
| 30. NADINE MASON | | | X |
| 31. DANIEL J. MCCAULEY | | | X |
| 32. MICHAEL J. MILANO | X | | |
| 33. STEVEN T. MORTON | | | X |
| 34. DUANE MOWREY | X | | |
| 35. JAMES M. ODOM | X | | |
| 36. MICHAEL L. PECK | | | X |
| 37. CARL PENDELL | | | X |
| 38. ALFRED J. RICHARDSON | | | X |
| 39. WILLIAM G. ROLL | X | | |
| 40. JAMES B. RUSSELL | | | X |
| 41. DAVID M. RUTKOWSKI | | | X |
| 42. DAVID M. SHY | | | X |
| 43. HENRY SLADEK | | | X |
| 44. CARMEN M. TAYLOR | | X | |
| 45. ROBERT V. THALAKER | | X | |

| DOCKET No. 400–84C ADAMS PLAINTIFFS | Parties Agree | Plaintiff Includes | Defendant Includes |
|---|---|---|---|
| 46. CARL VITANZA | | | X |
| 47. J.C. WERTENBERGER | | X | |
| 48. DAVID A. WHEELER | | | X |
| 49. DAVID E. WYANT | | X | |
| 50. LOUIS P. YOUNG | | | X |

| DOCKET No. 316–85C ALLISON PLAINTIFFS | Parties Agree | Plaintiff Includes | Defendant Includes |
|---|---|---|---|
| 1. THOMAS M. BREDEMUS | | | X |
| 2. SAMUEL W. BRENCE | | | X |
| 3. WILLIAM CHEVERE | | | X |
| 4. GARY L. GROVER | | | X |
| 5. PHILLIP GUERRERA | | | X |
| 6. CARLYLE HOLDER | | | X |
| 7. BERNARD D. IDLE, JR. | | | X |
| 8. DENNIS E. KRATZER | | | X |
| 9. RICHARD A. LANE | | | X |
| 10. ERNEST K. McMULLEN | | | X |
| 11. DAVID JOHN STEINER | | X | |
| 12. CALVIN STOKES | | | X |

| DOCKET No. 526–87C ABERNETHY PLAINTIFFS | Parties Agree | Plaintiff Includes | Defendant Includes |
|---|---|---|---|
| 1. DAVID R. ANDERSON | | | X |
| 2. ROLAND GLEN BAKER | | | X |
| 3. BOBBY MACK BARNES, JR. | | | X |
| 4. LARRY BARNES | | | X |
| 5. THELMA L. BLACK | | X | |
| 6. BRYAN A. BLEDSOE | | | X |
| 7. JEREMIA P. BYRNES | | | X |
| 8. ROBERT THOMAS CALLERY | | | X |
| 9. LARRY L. CARLSON | | | X |
| 10. DALE E. CHAPPELL | | | X |
| 11. SHARON K. CLAIR | | | X |
| 12. JAMES COCHRAN | X | | |
| 13. BRUCE E. CONGER | | | X |
| 14. WILLIAM A. DESKIN | | | X |
| 15. BRET WAYNE ELLIS | | | X |
| 16. JAMES R. FRAZIER | | | X |
| 17. LEONARD GRACE | | | X |
| 18. ROBERT W. GROVES | | | X |
| 19. TERRY L. HARDIN | | | X |
| 20. HOMER WILLS HENSLEY | | | X |
| 21. HARRY DWAIN HIBBITS | | | X |
| 22. DALLAS D. HILTON | | | X |

| DOCKET No. 526–87C ABERNETHY PLAINTIFFS | Parties Agree | Plaintiff Includes | Defendant Includes |
|---|---|---|---|
| 23. JAMES MICHAEL HODGE | | | X |
| 24. DONNIE R. HOWARD | | | X |
| 25. DONNA J. JACKSON | | | X |
| 26. JAMES K. JARVIS | | | X |
| 27. COLE A. JETER | | | X |
| 28. MARIA CARMELLA JONES | | | X |
| 29. MICHAEL C. KELLY | | | X |
| 30. JOHN J. KROLL | X | | |
| 31. VERNON H. LEPPERT | | | X |
| 32. MICHAEL D. LEWIS | | | X |
| 33. BILLY J. LOGAN | X | | |
| 34. GERARDO MALDONADO, JR. | | | X |
| 35. GARY D. MANTY | X | | |
| 36. GUNTHER KLAUS McCONNEL | | | X |
| 37. GERALD E. McCORKELL | X | | |
| 38. MARK PETER McEVOY | X | | |
| 39. KENNETH H. McKENNA | | | X |
| 40. RITA MARGARET MILLER | | X | |
| 41. ROBERT WALLACE MOORE | | | X |
| 42. DAVID L. PATRICK | | | X |
| 43. CARL F. PERRY | | | X |
| 44. BRIAN MUNRO PURDY | | X | |
| 45. MANUEL RAMOS | | | X |
| 46. WADE RENSTROM | X | | |
| 47. ROBERT J. REOME | | | X |
| 48. DAVID L. REUTERFORS | | | X |
| 49. LARRY D. ROBBINS | | | X |
| 50. DAVID J. ROPER | | X | |
| 51. TIMOTHY J. SECOR | | | X |
| 52. DEBRA LYNN SEIFERT (SENSBAUGH?) | | X | |
| 53. JOHN W. SHANK | | | X |
| 54. PHILLIP C. SMITH | | X | |
| 55. GERALD C. SOPER | | | X |
| 56. NEWELL E. TEMPLE | | | X |
| 57. LARRY THAYER | | | X |
| 58. JIMMY R. WASHINGTON | X | | |
| 59. CECIL GENE WHEELER | | | X |
| 60. DAVID WHICKER | | | X |
| 61. MORRIS A. WHITE | | | X |
| 62. ROY A. WILSON | | | X |
| 63. JIMMIE A. WOODWARD | | | X |
| 64. JOSEPH A. YONKMAN | | | X |

APPENDIX B

Plaintiffs Who Are To Be Dismissed

IN THE UNITED STATES
CLAIMS COURT

No. 268–84C

1. JAMES A. ALBRIGHT
2.
3. MAUREEN L. ASHLOCK
4. JOE H. BAGWELL
5. DONNA L. BAXTER
6. RICK G. BENDA
7. GORDON D. BENNETT
8.
9. JOHN M. BENTINE
10. RONNIE G. BERRY
11.
12. DENISE BLADE–TIGGENS
13. DONALD G. BLAIR
14. CLARENCE BOOE, JR.
15. BRUCE A. BORCHERT
16. DENNIS BOYDSTON
17. DARRELL L. BRADLEY
18. CLARENCE F. BREIER
19. SUSAN L. BRENGLE
20. CLAUDE VERNON BRESHEARS
21. WILLIAM HENRY BROOKES
22. LOIS W. BROWN
23.
24. WILLIAM F. BROWN
25. GARY K. BURTON
26.
27.
28. D.L. CASTROP
29. WILLIAM W. CHAPMAN
30. JACK A. CHRISTIAN
31. MARK W. CISKE
32. DONALD CLAIR
33.
34. BARRY E. CLAY
35. THOMAS M. CORDLE
36. LAWRENCE E. CORRELL
37. CLYDE COUCH
38. WILLIAM G. COX
39. DANIEL FRANK CURTIS
40. DAVID L. DAVIS
41. WILLIAM DECKER
42. CLARENCE A. DEERING
43. DONALD DEAN DEMSHAR
44. DANIEL W. DOSHIER
45. WESLEY LEE DUNTON
46. CARL E. EASLEY
47. JOSEPH R. EDDINGTON
48. RON K. EDGE
49. DWAYNE R. EDWARDS
50. BILLY ELKINS
51.
52.
53. ROBERT EMMONS
54.
55.
56. GARY L. EVANS
57. ROBERT E. FAIRFIELD
58. REX D. FAUGHT
59. KAREN L. FEARL
60. VINCENT JIMMY FICALORE
61. RONALD G. FIRESTONE
62. JAMES D. FLEMAL
63. OTIS FOBBS, JR.
64. MARY FORD
65.
66.
67. GAYLORD F. GAYNOR
68. JOHN A. GENDE
69. GARY D. GENTRY
70. ERNEST A. GIBSON
71. JANICE GIBSON
72. ROBERT R. GLOVER
73. BARBARA SUSAN GOBETZ
74.
75. DAWNA S. GOMEZ
76. FRANCIS J. GOMEZ, JR.
77.
78. CRAIG D. GRAHAM
79. STEVEN K. GRASSEL
80. JEFFREY K. GRAVES
81. ETHEL B. GRIFFITH
82. MICHAEL L. GROTEFEND
83. ROBERT J. HAMILTON

84. JOE C. HAMPTON
85.
86.
87.
88. THOMAS F. HENEGHAN
89. THOMAS G. HENNING
90. LIONEL HENNINGS
91. JAMES R. HENRY
92. JAMES F. HICKERSON
93. KENNETH D. HIGGENS
94. DARRELL W. HINDS
95. RODNEY D. HITCHCOCK
96. MARK W. HOLDEN
97. MINOR LEE HOLLAN
98. LARRY J. HOOD
99. JAMES CLYDE HOWARD
100. DOUGLAS M. HUDSON
101. WILBUR J. HUDSON
102.
103. ROGER DEAN HUFFMAN
104.
105. WILLIAM ISAACSON
106. STEVEN R. JARVIS
107. MICHAEL J. JENSON
108.
109. NELVA JEAN JOHNSON
110. JAMES R. JOHNSTON
111. JERRY JOHNSTON
112. DONALD J. KABERLINE
113. ROBERT DAVID KELLEY
114. RICHARD KEMNITZ
115.
116. HAROLD D. KIRK
117. WALTER R. KITTS
118. MICHAEL D. KLAWITTER
119. HOWARD W. KNOTT
120. RICHARD A. LAABS
121. DENNIS S. LAKE
122. N.D. LEIFER
123. JOHN R. LINN
124. JOE LISTERMAN
125. RAY A. LIVINGSTON
126. BERNARD NELSON LOOMIS
127. KAREN KAY MABRY
128. CARL R. MAGGARD
129. BILL J. MAIN
130. GAYLAND M. MAIZE
131. THOMAS J. MAJORS
132. WILLIAM R. MAURER
133. MICHAEL A. MCDANIEL
134. NEAL R. MCINTURFF
135. DONALD R. MCNURLIN
136. DONALD L. MCWHORTER
137. RONALD GENE MELTON
138. MERLIN E. MEYER
139. LEROY MIDDLETON
140. DIANE MITTELSTEDT
141. JULIE A. MITTELSTEDT
142. JOHN T. MOONINGHAM
143. RONALD LEE MOORE
144. ROOSEVELT MOORE
145. FRANKLIN L. MORSE
146. DENNIS MOSHER
147. FRED A. MUELLER
148. STEVEN D. MYRICK
149. CYNTHIA G. NEHL
150. RONALD J. NELSON
151. CLYDE H. NORMAN, SR.
152. SIDNEY A. NYHOLM
153. RICK J.J. OLIVER
154. BENNY L. OWENS
155.
156. JERRY F. PEARSON
157. DONALD L. PELGER
158. RALPH P. PHILLIPS
159.
160.
161. MARK L. POLLOCK
162. MONTE R. POWELL
163. ARMANDO D. PRADO
164. RANDALL L. PROEBER
165. WAYNE R. PROGEN
166. DAVID QUINN
167. GARY L. RAGAIN
168. ALBERT RAKESTRAW
169. JEROME R. RANDALL
170. GARY W. REA
171. DENNIS E. ROBERTS
172. HILDRED E. ROBINSON
173. DONALD JOE ROSE

174. DAVID R. ROSS
175. DEBORAH A. ROSS
176. ARGUS W. RUSSELL, JR.
177. GLENN A. SARBER
178. LYNN M. SARBER
179. TERRY L. SAUNDERS
180. RICHARD SCALZO
181. EDWARD D. SCHNEIDER, JR.
182. RALPH J. SCHULZ
183. BOYDE E. SCOTT
184. JAMES CLAYTON SHANE
185. CHARLES A. SICKMYRE
186.
187. ROBERT ALAN SIMPSON
188.
189. JOHN W. SMALL
190. HARRY C. SMITH
191. LAWRENCE R. SMITH, JR.
192. LYLE H. SNYDER
193. RANDY L. SOENKSEN
194. GARY E. STAMMEN
195. DONALD C. STARK
196. CLIFFORD STEENHOFF
197.
198. WAYNE D. STEPHENS
199. JERRY C. STIRMAN
200.
201. DANIEL E. TETZLAFF
202. JAMES W. THONTON
203. WILLIE TIGGENS, JR.
204. NEREIDA TORRES
205. LARRY D. TRANTHAM
206.
207. LYMAN A. TURNER
208. TEDDY V. VERFURTH
209. PETER J. WARD
210. LEVI WARREN
211. KENNETH R. WHEELER
212. RONALD E. WHILEY
213. WILLIAM D. WHITSON
214. DANIEL R. WILKEN
215. DEWAYNE R. WILLIAMS
216. ELVA L. WILLIAMS
217. JUDITH ANNE WILLIAMS
218. ROY E. WILLIAMS
219. RONALD S. WOODS
220. DAVID B. YAISER
221.
222. WANDA YOUNG
223.
224. KENT L. ZOOK

IN THE UNITED STATES
CLAIMS COURT

No. 400–84C

1. Joe E. Adams
2.
3. Robert D. Adams, Jr.
4. Donnie E. Aleshire
5.
6. Walter Paul Alef
7. Coralyn Alexander Brown
8. Woodie W. Allen, III
9.
10. Robert E. Alvis
11. Gary D. Amstutz
12. James A. Anderson
13. Danny R. Asher
14. John P. Aton
15. Donald Banner
16. Thomas E. Beck, Jr.
17. Charles Dudley Beckham
18.
19. Anna L. Behrens
20.
21. Daniel V. Bellotte
22. James Benford
23. Herbert Y. Betts
24. Edward F. Bequette
25. Solomon P. Bidding
26. Thomas P. Blackwell
27. Domingo (Domini) Blanco
28. Robert G. Blanke
29. John W. Bloom
30. Ronald L. Boatwright
31. George A. Bolner
32. Charles T. Bolog
33.
34. Steve Robert Boreen
35. Paul F. Bosquez

36. Gary Bowen
37. Larry Bowers
38. Horace S. Boyd, Jr.
39. Timothy R. Boyle
40. Richard L. Brewer
41. James E. Bridgeforth
42. Thomas G. Brookie
43. Boyce D. Brown
44. Larry D. Brown
45.
46. Melvin Brown, Jr.
47. Jerry W. Burns
48. Warren E. Burton
49. Richard S. Byrd
50. Francis B. Caddell
51. Terry L. Cain
52.
53. George B. Carpenter
54. Richard S. Carter
55. Donna S. Casteel
56. Roger D. Catron
57. Kendall R. Chadwick
58. Glenn A. Chambard
59. Kenneth Chambard
60. Angel Chevere
61.
62.
63. Michael Church
64. Raymond Churchill
65. Patricia Joann Claspill Sharp
66. Donald B. Claxton
67. Douglas Clay
68.
69. James W. Clem
70. Cecil A. Clinton
71. Sharon Coard
72.
73. Hosie Coffee
74. Ivan Darrell Cooke
75. Albert D. Cooper
76. Joe E. Coronado, Jr.
77. T.J. Creek
78.
79. Eddie R. Curtis
80. Charles M. Daughtrey
81. Kenneth W. Dawson
82. Betty J. Decker
83. Harold De Jesus
84. Larry R. Dollarhide
85. Mose E. Dorsey
86. Ronald P. Doyon
87. Dean A. Drewitz
88. Edward J. Drust
89. George A. Dubaskas
90. Raymond N. Duke
91. Kenneth P. Dunn
92. Brenda M. Duran
93. Stephen L. Dusa
94. Robert P. Eisenbaugh
95. Larry W. Ellingsworth
96. William H. Ellis
97. Michael A. Escobedo
98.
99. Raymond L. Eskridge
100. Sharon Evans
101. Ivan L. Fail
102. Joseph Lewis Falzone
103. John M. Fazio
104. Michael A. Fetzer
105. Lewis K. Field
106. Thomas R. Foltz
107.
108. Richard V. Fortunato
109. Mark R. Freeman
110. Robert A. Fricke
111.
112. Robert E. Gering
113.
114. Ralph Lee Gezelman, III
115. James P. Glancy
116. Lynnford R. Godfrey
117. Wendell Goetz
118. Terry F. Goheen
119.
120.
121. M.D. Goodnight
122. Nelson Gorden, Jr.
123. Ron Gordon
124. John Gorski
125. Mark Granger

126. John L. Gray
127. Karen J. Gray
128. Lamar E. Gray
129. Richard R. Gregg
130. Thomas L. Gregory
131. Arthur Taylor Grissom, Jr.
132. Terry L. Groh
133. David Earl Hagood
134. Earl C. Haling
135. James W. Hall
136. Roger O. Hanchett
137. Allie J. Hardgman
138. Royal Harder
139. Robert V. Harper
140. Michael L. Hartman
141. Daniel R. Harvey
142. Samuel P. Hawkins
143. Charles Ray Heilig
144. Gary T. Henderson
145. Oather E. Henry
144. Lawrence Hensley, Jr.
146. Donald H. Herdina
147. Clifford A. Holdren
148. Loy J. Holliday
149. Lloyd Raymond Holmes
150. John F. Holtz
151. Mike Horton
151. Robert E. Howard
152.
153. Susan Marie (Huber) Wohlfert
154. Harry Lynn Huff
155.
156. Larry Joe Huse
157. John Hyland
158. James S. Irby
159. Gladstone L. James
160. Bernadine Johnson
161. Morris W. Johnson
162. Norman D. Johnson
163. Thomas J. Johnson
164.
165. William C. Jones
166. Sadie J. Jordan
167. George R. Judkins
168. Hulsey R. Jumper
169.
170.
171.
172. Bettye L. King
173. Robert L. Kinot
174.
175. Martin A. Kopnick
176. Stanley Kotlarczyk
177. John F. Kram
178. Robert Lewis Kyle
178. Edwin J. Lamborn
179. Ted R. Laney
180. Donald F. Lang
181.
182. Terry Lathrop
183.
184.
186. Lana E. Leyba
185. William E. Limpus
186. James A. Lollies
187. James M. Long, Jr.
188. Raul A. Lopez
189. Raymond D. Lorenz
190. Richard A. Lory
191. Alfred Lukima
192. Dante P. Marzetti
193.
194. John Allen Mattsen
195. Gary H. Maurer
196. Jim S. May
197. John Y. May
198. Charles T. McCalmon
199.
200. Haskel McCleskey
201. Raymond A. McClung
202. Philip H. McComas
203. Clydean McDaniel
204. John T. McGinnis
205. Nelson E. McKinley
208. William McNally
206. Dennis Charles Meeham
207. Matt A. Midgley
208. David J. Mikel
209.
210. Carlo Rodger Mobley

211. Nicholas Monda
212. Michael T. Moore
213. Paul D. Moore
214. Leon J. Mormann
215. Glen A. Morris
216.
217. Douglas L. Moyer
218. Haneef A.R. Muhammad
219. Kenneth Lee Murphy
220. Y.E. Narvaez
221. Michael G. Nehl
222. Gary P. Nussman
223. Roger L. Oaks
224.
225. James R. Oliver
226. William R. O'Neal
227. Conrad C. Ortega
228. Larry T. Ortega
229. Evangelisto Ortiz
230.
231.
232. Michael A. Pennington
233. Kenneth Ward Perkins
234. James Person
235. Alvin S. Pettit
236. Harlan E. Phillips
237. Florence Philyaw
238. Henry L. Philyaw
239. Joseph E. Pierce
240. Randle Pierce
241. Danny Robert Porter
242. Phillip M. Potts
243. John W. Pounds
244. Robert L. Presley
245. Dale L. Ramey
246. Delbert H. Randles
247. A.G. Raney
248. Ronald L. Ray
249. Floyd Raymond
250. James F. Raynor
251. Charles B. Reed
252. Sherman Lee Rice
253.
254. Judy G. Riddle
255. Don L. Ring
256. Donna F. Roberds
257. Elmer R. Roberts
258. Steven D. Robertson
259. Jeremiah Robinson
260. Irvin F. Roehl
261. Frank Rolen, Jr.
262.
263. Lewis Rollings
264. Richard A. Rose
265. Earl G. Runyon
266. Bobby Gene Ruoff, Jr.
267.
268.
269. Steven Sakaguchi
270. Michael R. Sammons
271. German Sanchez
272. Richard Sanchez
273. Leslie A. Sapsford
274. Amy G. Schelcher
275. Judith M. Schmidtke
276. James P. Schubring
277. George H. Schultz
278. Jerome L. Schultz
279. Ray A. Schwarz
280. William Scopinich
281. Calvin W. Scott
282. Ed Scroggins
283. Rodney Sharp
284. James T. Shaw
285. Byron D. Sherrill
286.
287. George R. Sillavan
288.
289. Marvin Lawrence Slocum
290. Thomas J. Smith, IV
291. William A. Smith
292. Onix A. Soto
293. Richard M. Spartz
294. Willie Spears
295. Ricky Springer
296. Dianna Fay Stacy
297. Larry D. Steward
298. Michael E. Stewart
299. Wilbur L. Stewart

300. Michael Stinson
301. Robert W. Strouse
302. Patricia J. Sullivan
303. Michael B. Swires
304. Robbin Stanley Swokla
305.
306. James L. Teczar
307. Monte R. Temple
308.
309. Chern E. Thomas
310. Dennis A. Thompson
311. Mary Anne Thompson
312. William C. Thompson
313. Elmer H. Thomson
314. Michael Torrence
315. Patricia E. Triplett–Ali
316. Kevin M. Van Demark
317. Carl A. Vaughan
318. Anthony Ventura
319.
320. Dale Vulgamore
321. Calvin Walker
322. Larry D. Walker
323. Cecil F. Wallace
324. Joe D. Ward
325. Roy E. Ward
326. Bruce D. Watt
327. James Lloyd Wellman
328.
329.
330. Danny L. White
331. Peggy A. Whiteside
332. Dwayne Elbert Whobrey
333. Ernest L. Williams
334. Gail L. Williams
335. Lester N. Williams
336. Freank L. Wilson
337. Gary D. Winkler
338. Joel B. Witham
339. Keith H. Wohlfert
340. Fred Wojtuniak
341. Jerry J. Wolfe
342. Thomas E. Wood
343. Marvin L. Woods
344. Ervin E. Wooten

345. Donald O. Wright
346.
347. Joe C. Wyatt
348. Thomas E. Wyatt
349. Cedric R. Young
350.
351. Arnold Zimmerman

### IN THE UNITED STATES CLAIMS COURT

No. 316–85C

1. BILLY JOE ALLISON
2. RONALD J. ANDERSON
3. SANTA JOANN JONES ARMSTRONG
4. NICHOLAS A. AVIGNONE
5. RAUL AYALA
6. BOBBY A. BARBER
7. PAULA J. BEASLEY
8. MICHAEL BELLONE
9. CHARLES C. BINGHAM
10.
11.
12. MARK J. BRUNER
13. RANDY G. BURGESS
14. NICHOLAS CAIAZZA
15. JAMES C. CAMPBELL
16. STEVEN CANTON
17.
18. CHARVELLA CHRISTMAS
19. GARY W. CHRONISTER
20. FRANCES COBIAN
21. PETER C. COBOURN
22. EDDIE COHEN
23. JOHN C. COLEMAN
24. ROBERT W. COLLIER
25. VICTOR CRUZ
26. DEWAYNE G. CUDDEBACK
27. ALLEN L. CUNNINGHAM
28. ANGEL DAVILLA–RICHARD
30. RONALD W. DAVIS
31. CHARLES DEROSA
32. GREGORY WAYNE DION
33. JOE DIXON
34. MITCHELL DRUCKER

35. WALTER J. DUNCAN
36. BRENDA DURAN
37. ROBIN EAKS
38. BURTON ENGLE, JR.
39. NOVA J. FANN
40. MICHAEL GARONE
41. WALLACE J. GOLDBERG
42. NELSON GORDON, JR.
43. ROBERTA GORDON
44. EDWARD GRIFFIN
45.
46. KATHERINE J. GROVER
47.
48. JIMMY W. HAGGARD
49. TERESA MARIE HARTER
50. LESLIE A. HEILMAN
51. THOMAS GREGORY HENNING
52. HUGH HERBERT
53. RENE HERNANDEZ
54. BEULAH HILL
55. KENT EVERS HILL
56. JACK LYMAN HODGKINSON, JR.
57. DRUSCILLA HOFFMAN
58.
59. CLARENCE HOPKINS
60. CHRISTOPHER HUNDLEY
61.
62. TYRONE JACKSON
63. HERMAN JAMES
64. RICHARD JOHNSON
65. RONALD C. JOHNSON
66. ARTHUR KAYE
67. PHILLIP H. KERR
68. THADDEUS STANLEY KOPEC
69.
70.
71. MICHELLE LEONARD
72. ROGER L. LOYALL
73. STEVEN MARTIN
74. JANET KAY MASON
75. DWAYNE T. MATTHEWS
76. CHARLES P. MCDONOUGH
77. STEPHEN THOMAS MCKINLEY
78.
79. DAVID M. MCVEY
80. MARVIN E. MILLER
81. RICKEY H. MILLER
82. STEVEN WAYNE MILLER
83. DENNA JO MOORE
84. MARY MOORE
85. ERNEST MORALES
86. WILLIAM MORAN
87. DERREL L. MOUNCE
88. EMILO ORTIZ
89. NANCY PARRISH
90. REX EDWARD PARRISH
91. LEROY R. PITTS
92. WILLIAM H. REED
93. ELIAS RIVERA
94. GEORGE RIVERA
95. DENNIS EUGENE ROBERTS
96. STEVEN RUSSELL ROUTSON
97. RAYMOND L. ROWIN
98. GLEN RUIZ–GONZALEZ
99. ARGUS W. RUSSELL, JR.
100. LAVERN L. SCHWANDT
101. MICHAEL D. SEYBERT
102. DENNIS SHIELDS
103. RICHARD A. SIDWELL
104. DEBRA SINSABAUGH
105. RICHARD ALAN SOMMERVILLE
106. BRIAN STEIN
107.
108. CARL D. STITES
109.
110. MANUEL SUAREZ, JR.
111. GLENN E. SUMMONS
112. LEROY JOHN SWIATLY, JR.
113. NATHANIEL TIMBERLAKE
114. JOHN A. VAN CLEEF
115. JOSE VEGA
116. NESTOR VELEZ
117. GARY STEWART WARD
118. JUNE WATLEY
119. PAMELA K. WHEELER
120. JOE H. WHIPPLE
121. RICHARD WILLIAMS
122. STALEY WILLIAMS
123. BRENDA WILSON
124. CRYSTAL G. WILSON

125. DOUGLAS WINGER
126. DANIEL D. WRIGHT
127. MARIA E. WYLIE

IN THE UNITED STATES
CLAIMS COURT

No. 526–87C

1. RONALD JACK ABERNETHY
2. RICHARD K. ALAN, SR.
3. LATONIA J. ALLEN
4. CLIFF F. AMAN
5. RICHARD F. ANCTIL
6.
7. MARCEL A. ANDERSON
8. TIMMY D. ANKNEY
9. THOMAS M. ARSENAULT
10. PAUL A. AUBIN
11.
12. GUSTAVO A. BALDOVINO
13. RONNIE L. BANKS
14. CHRISTOPHER R. BARKSDALE
15.
16.
17. MICHAEL D. BARNETT
18. MARY KATHERYN BELT
19. JEAN C. BENEDICT
20. WILLIAM M. BENNETT
21. JOHN L. BICKFORD
22. RONALD EARL BISHOP
23.
24.
25. WENTON L. BLEVINS
26. MICHAEL JAMES BOUTIN
27. JIM L. BOYT
28. CRAIG A. BRADLEY
29. TERRY BRANSCOM
30. ROBERT W. BRANTLEY, JR.
31. SHERRILL LAWRENCE BRETT
32. LISA ANN BRIGHT
33. GORDON J. BRITTON
34. EDWARD L. BROWN
35. GLEN BRUMMETT
36. GARRY D. BURRIS
37. BRIAN M. BYRNE
38.
39. KAREN L. CALDWELL
40.
41. GARETH J. CAMP, JR.
42. JAMES W. CAMPBELL
43.
44. ROY PETE CARNAGEY
45. RICK D. CARRELL
46. DONNY L. CARROLL
47. LARRY L. CARTER
48. DONALD L. CENTERBAR
49.
50.
51. WESLEY D. CLARK
52. JERRY EARL CLEM
53. DONNA LYNN CLEMENTS
54. RALEIGH DUANE CLEMMER
55. JOHN A. CLOUSE, JR.
56. RONALD N. CLOUTIER
57. AL HENRY COATES
58.
59. CHARLES E. COLLINS
60. LAWRENCE D. COLLINS
61.
62. DANA A. CORNEAU
63. JOE L. COSBY
64. RICHARD J. D'ANDREA
65. HARRY F. DARLING
66. TERRY L. DASHNO
67. LOUISE M. DAVIS
68. EDWIN D. DELANEY
69. CHARLES C. DENT
70.
71. PRISCILLA LYNN DICKENSON
72. KELLEY DONALDSON
73. BERT T. DOOLEN
74. JEROME DORN
75. BEVERLY GAIL EATON
76. SHERYL EGGER · ·
77. DAVID G. EHRICH
78. BILLY EDWARD ELKINS
79.
80. LOU ELLEN ELLIS
81. JAMES M. EMERY
82. LEON J. EMOND
83. MARSHA J. EYMAN

84. DONALD C. FARRELL
85. DANNY HARRIS FELTON
86. DOUGLAS A. FERDO
87. ONFRE FERNANDEZ
88. ROBERT W. FIDELL
89. LUIS MANUEL FIGUEROA
90. DAVID H. FILTER
91. DARYL G. FLANIGAN
92. SHANE D. FORD
93. JOSEPH EDWARD FORTE
94. DONNA L. FORTIN
95. MARVIN H. FORTNER
96. LOLA F. FOSTER
97. VIRGIL HENRY FRANA
98. PETER I. FRARY
99.
100. ERNEST EDWARD FRIC
101. PAUL DAVID GABBERT
102. WILLIAM R. GAEDE
103. ROBERT S. GLENN
104. JOSEPH J. GODFREY
105. FREDERICK WILLIAM GOMAN
106. DALE ANDREW GOODROW
107. RICHARD C. GORDON
108. THOMAS ALBERT GORRON
109.
110. MANFORD L. GRENINGER
111. GARY LEE GRIEWAHN
112.
113. WAYNE S. GROVES
114. RICHARD SCOTT GRUEN
115. LEE ANN GRZIB
116. RICHARD E. GUINEY
117. JANICE I. GUNNELL
118. KELLY L. HAIG
119. GWEN HAMILTON
120.
121. MATTHEW M. HARRINGTON
122. LARRY CAMPBELL HARRIS
123. ROBERT FRANK HARRIS
124. JEFF B. HAYS
125. RONALD B. HEMPHILL
126.
127. ARTURO P. HERNANDEZ
128. FEDERICO P. HERNANDEZ
129.
130. BRENDA F. HILBURN
131.
132. RODNEY DEE HILTON
133.
134. JACK HOGAN
135. LAWRENCE RONALD HOLDER
136. JAMES RAYMOND HOLLENBERG
137.
138. JOHN H. HOWARD
139. RUSSELL W. HUBER
140. HAROLD H. HURLEY
141.
142. ERNEST G. JACKSON
143.
144. JOE W. JARVIS
145. DOUGLAS A. JERDO
146.
147. MARY CHARNELL JOHNSON
148. ALLEN JOHN JONES
149. CECIL A. JONES
150. JUDY G. JONES
151.
152. ROBERT E. JONES
153. WILLIE JONES, JR.
154. WALTER A. JORDAN
155. BRUCE K. KAVANAUGH
156.
157. WENDELL S. KELLY
158. LARRY LEE KERR
159. JIMMIE L. KOLLING
160. JOSEPH P. KOPACH
161.
162. ALF JOHAN LANGE
163. STEPHEN L. LAPIERRE
164. RANDALL BROOKS LATHAM
165. ELDON A. LEBLEU
166. DAVID A. LEDWITH
167.
168. DWIGHT E. LETTERMAN
169. JAMES W. LEWIS
170.
171. LESLIE LITTLE
172.
173. ROSEMARY C. LOGAN

174. EUGENE P. LOWREY
175. JAMES P. LYNCH
176.
177. DANIEL C. MALONEY
178.
179. WILLIAM P. MARSHALL, JR.
180. DOUGLAS MASON
181. HAROLD S. MATTIX, JR.
182. CHARLES V. MAYHEW
183. BREAVESS McBRIDE
184. BETTY INEZ McCLAIN–MURPHY
185.
186.
187. DONNA K. McCRACKEN
188.
189.
190. GEORGE McPHERSON
191. RICHARD W. MEIER
192. RANDY MELTON
193. LESLY J.A. MICHEL
194. JOHN ROGER MIETELSKI
195. THOMAS ORLANDO MILES
196.
197. ROBERT DAVID MILLER
198. STEPHEN M. MILLS
199. LEVI MITCHELL
200. TEDDY LEE MITCHELL
201. STEPHEN M. MONINGTON
202. SAMUEL B. MONROE
203.
204. THOMAS L. MOORE
205. CANDICE DEBORAH MORGAN
206. LEON WILLIAM MORGAN
207. DARTH J. MUNCY
208. JAMES B. NANCE
209. WILLIAM B. NEWTON
210. CECIL D. NICHOLS
211. DOROTHY J. NORMANN
212. JANIE M. OLIVER
213. BRAD P. PARKER
214.
215. HERBERT R. PATTERSON
216. ARTHUR PEREZ
217.
218. GERHARDT P. PFEIFER

219. CHARLES ALLEN PHERIGO
220. MICHAEL WM. PHILLIPS
221. ROBERT A. PODGORSKI
222. LAWRENCE WAYNE POHLPET-ER
223. LEO P. POIRIER
224. HARRY D. POWELL
225. ROY D. PRESLEY
226. K.P. PRICE
227. DAVID M. PUENTE
228.
229. THOMAS LEE QUICK
230.
231. MELODY LYNNE RAMSEY
232. DANNY RAY REAGAN
233. CARLOS BERTON REES
234. RICHARD D. REES
235.
236.
237.
238.
239. ELIZABETH ARDITH ROEKER–JARVIS
240.
241. GILBERT PATTISON ROSE
242. STEPHANY E. SCHULL
243. GARY L. SCOTT
244. RONALD B. SEARS
245.
246. ARNOLD GEAN SEIFERT
247.
248.
249. PATRICIA JOANN SHARP
250. ALDEN SIMMONS
251. ALPHONSO SIMMONS
252. RALPH O. SLATON
253.
254. DAVID P. SNYDER
255.
256. CALVIN SPENCE
257. DONNA MARIE SPONHOLTZ
258. DANIEL L. STALLINGS
259. ROBERT LEE STARCHER
260. GEORGETTA J. STARKE
261. DENNIS W. STEVENS
262. RAYMOND J. STEVENS

263. KEITH D. STEWART
264. WILLIAM LEE STRICKLAND
265. NANCY JOANNE STUCKEY
266. SHERIDAN C. SWINYER
267. JULIE SZEMPLENSKI
268. DANIEL VICTOR TAUB
269. WILLIAM L. TAYLOR
270.
271.
272. THERESA ANN TOWNE
273. DONALD R. TUCKER
274. ARZO DEAN TUREAUD
275. TERRI JANE TUREAUD
276. CAROLYN J. TURNER
277. KATHLEEN MARIE TURNER
278. LEROY DEAN TYE
279. CLYDE B. VANN
280. JOHN BROOKSBANK VAN OR-
MAN
281. BRENDA JOYCE VAUGHN
282. WILLIAM D. VAWTER
283. MARTIN A. VESEL
284. HENRY BERNARD WALKER
285. WILLIAM JUDE WALLACE
286. STEPHEN G. WALLS
287.
288. SANDRIA V. WASHINGTON
289. GERALD CARL WEBINGER, JR.
290. ARMEN A. WEDELL
291. CHARLES R. WHALEN
292.
293. DARLENE KAY WHEELER
294. DAVID WHICKER
295.
296. DONALD H. WHITECOTTON
297. JOHN J. WIECHART
298. DALE GARY WILKENING
299. DONNIE J. WILKS
300.
301. PAUL C. WOODALL
302.
303.
304. TROY N. YOUNGBLOOD

305. COLLEEN M. ZACKERY
306. ROBERT ZAJIC
307. CLARA M. ZIMMERMAN

